IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED
03 MAR 24 PM 3:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

LAURA COLLEY, )
)
    Plaintiff, )
) CIVIL ACTION NO.
v. )
) 02-AR-1017-M
PROGRESS INDUSTRIES, INC., AND )
IRADJ TARASSOLI, )
)
    Defendants. )

ENTERED
MAR 24 2003

### MEMORANDUM OPINION

    Before the court is a motion for summary judgment by defendants, Progress Industries, Inc. ("Progress") and Iradj Tarassoli ("Tarassoli")(collectively "defendants"). Laura Colley ("Colley") brings claims against Progress and Tarassoli, who is president and principal of Progress, for sexual harassment in violation of Title VII, assault and battery, invasion of privacy and outrage. In addition, the first part of Colley's complaint alleges a constructive discharge, which Progress and Tarassoli treat as an additional claim for purposes of summary judgment.

### Statement of Undisputed Facts

    Colley worked for Progress as a secretary and receptionist from 1993 until January 11, 2000. Colley claims that Tarassoli sexually harassed her during the last four years of her employment by grabbing her breasts, constantly touching her, asking her for sex and talking about his sex life, among other



unwelcomed and illegal acts. She filed her charge of discrimination on June 20, 2000. Colley never reported any of this harassment. Progress did not have a sexual harassment policy during Colley's employment. Although Tarassoli contended that there was an "open door" policy, there was no one in Progress' management that was not a member of Tarassoli's immediate family. Tarassoli, his wife, Maria, and his two sons own all of the stock in Progress.

　　　The first instance of improper conduct occurred after a Christmas party in 1996. Colley claims that Tarassoli kissed her. When he kissed her she backed up and told him "No" and that she was going home. Colley testified that after the incident Tarassoli came up behind her and grabbed her, sometimes grabbing her breasts. He would also come up to her and rub against her. She claims that this happened approximately on a weekly basis for a three year period. Colley also claims Tarassoli told her he wanted to have sex with her on a weekly basis. Tarassoli asked her to go home with him approximately five or six times and forced her to place her hand on his erection on five or six occasions. Tarassoli made sexual comments about Colley's clothes approximately ten to twelve times. He also gave her a ring as a present. Colley repeatedly told Tarassoli to leave her alone and that she wanted the conduct to stop. She testified that she stayed at her employment because she had bills to pay and could

not afford to take a pay cut. Colley made $11.54 per hour at the time she quit on January 11, 2000. Colley did not begin to look for another job until late 1999.

Fred Jones ("Jones"), an employee of ConTel, Progress' telephone system provider, witnessed Tarassoli grab Colley's breasts during a service call in March of 1997. However, there is no record of Progress ever being billed for a service visit by Jones in or about March of 1997. Colley testified that she told other coworkers about the harassment. She said two of her coworkers, Christy Bains ("Bains") and Sylvia Fritz ("Fritz"), witnessed Tarassoli coming up behind her and touching her. Colley believes that Bains and Fritz wrote statements for the EEOC but she does not offer any actual testimony by Bains or Fritz.

Colley injured her wrist in a car accident on January 4, 2000. She went to work briefly after the wreck and tried to work but was physically unable to do so because of her injury. On January 11, 2000 she came into work and Tarassoli came up to her and grabbed her breasts. Colley left a pink slip on Maria's chair allegedly to indicate that she was taking vacation. Colley testified that she was planning on returning to work as soon as she was physically able to do so. She never returned to work at Progress. Maria subsequently wrote Colley a letter telling her she was accepting her resignation. Colley saw this letter as her way to "get out" and never tried to get her job back with

3

Progress. However, Colley responded in writing to Maria's letter stating:

> I really never thought I would leave the company. I just can't leave things the way they ended. **I had planned to come back to work**, but I should have called you while I was out, and that is my fault. I understand why you sent the letter. The only thing I guess that has been bothering me and I haven't been able to get it off my mind, I think you thought I was mad at you or someone when I left. That is not the case. I was just so frustrated with not being able to do anything and seeing a lot of my mistakes from just either being exhausted or from being out and trying to catch up.

(emphasis supplied.) Colley claims she wrote this letter in an attempt to receive her vested profit sharing benefits and was concerned that if she said anything offensive, she would not receive her benefits.

### Analysis

In order to prevail on a Title VII sexual harassment claim, plaintiff must show that 1) she belongs to a protected group; 2) she was subjected to unwelcome sexual harassment; 3) the harassment was based on sex; 4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment; and 5) there is a basis for holding the employer liable for the harassment either directly or indirectly. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999)(*en banc*). Defendants did not attack Colley's ability to meet these elements.

Defendants move for summary judgment on Colley's sexual

4

harassment claim on the grounds of timeliness as well as unreasonable delay. Of course Tarassoli himself was not Colley's employer and cannot be sued under Title VII. Colley testified that on her last day of work January 11, 2000, Tarassoli put his hands on her breasts and this led her to decide not to return to work. This incident falls within the 180 day time period for filing an EEOC charge. Furthermore, the touching and comments were occurring on a daily and weekly basis. Defendants concede that with her affidavit Colley created an issue of fact as to whether there were any actions which took place within 180 days of her charge and contributed to a hostile environment.

Defendants next argue that Colley's claim of sexual harassment is due to be dismissed because her delay in filing her charge has prejudiced defendants. In *National Railroad,* the court noted that a plaintiff is barred from maintaining a suit if she unreasonably delays in filing suit and as a result harms the defendant. This defense requires proof of lack of diligence by plaintiff and prejudice to the party asserting the defense. The question of delay, as well as the issue of laches itself is left to the discretion of the court. *Burnett v. New York Central Railroad Co.,* 380 U.S. 424 (1965). Defendants contend that Colley has offered no explanation for her delay of three and one half years in filing a charge with the EEOC with respect to Tarassoli's harassment. Defendants argue that they have been

5

severely prejudiced by this delay. They argue that even though Colley claims that Tarassoli harassed her on a weekly basis in a very small office area with a number of people present, she has not been able to produce any evidence from any present or former employee of Progress who claims to have actually witnessed even one such incident. Furthermore, the only eyewitness Colley has produced is Jones, the telephone repairman, and the telephone company no longer has work tickets from 1997.

Colley first claims that defendants are barred from pursuing this defense because it was not pled in defendants' answer and is thereby waived. Fed. R. Civ. Pro. 8 (c). However, defendants correctly point out that they asserted in their answer that Colley's claims for any alleged actions which took place more than 180 days prior to the filing of her charge with the EEOC are barred. Defendants contend that it is that defense upon which defendants rely in claiming that Colley's claims of sexual harassment should be dismissed based on the doctrine of laches.

Colley points out that *National Railroad* makes clear the viability of the continuing violation doctrine in sexual harassment cases. A charge alleging a hostile work environment claim will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period. *National Railroad* at 2077. *See also Quillen v. American Tobacco*

6

Co., 847 F. Supp. 1285, 1292 (M.D. Ala. 1995). It is clear that Colley's allegations fall under the category of continuing violation. On each day Colley went to work and Tarassoli harassed her a violation of Title VII occurred. On January 11, 2000 Colley went into work and Tarassoli grabbed her breast. She filed a timely charge of discrimination with the EEOC on June 20, 2000. Defendants cite no cases to support the proposition that a plaintiff who is sexually harassed over a time period must file a charge of discrimination with the EEOC at some earlier point during the harassment. Defendants did not have a sexual harassment policy during Colley's employment. Only members of Tarassoli's family were in management for defendant. Defendants argument that they are entitled to summary judgment on the Title VII sexual harassment claim because of Colley's unreasonable delay must fail.

    Colley further argues that defendants brief totally mischaracterizes the testimony of Jones in an attempt to discredit Jones. This is an argument for a jury and not an issue for summary judgment consideration. Jones testified over and over again that he did not know whether Progress was charged for the service call. The court agrees that defendants' arguments on this point are for a jury and not appropriate at this stage of the proceedings.

    In order to demonstrate a constructive discharge, plaintiff

7

must show the existence of conditions at her employment which were so intolerable that no reasonable person could have been expected to bear them any longer. *Griffin v. GTE Florida Inc.*, 182 F3d 1279 (11th Cir. 2000). A mere hostile environment claim actionable under Title VII is not enough to support a constructive discharge; more is required. *Johnson v. Wal-Mart Stores, Inc.*, 987 F. Supp. 1376 (M.D. Ala. 1997). A constructive discharge claim is unavailable where an employee "assumes the worst and jumps to conclusions too fast" rather than trying to work out the problem. *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987).

Defendants argue that this is a garden variety sexual harassment claim which does not rise to a level sufficient to support a constructive discharge claim. Second, defendants point out that Colley did not find the conduct she alleges to be sufficiently egregious for her to feel it necessary to resign sooner. In fact, she never quit, according to her own contention that she was only taking a vacation. Her own post-resignation letter supports this contention. The alleged harassment began in 1996 and continued for three years. How can an employee say that she quit under oppressive circumstances and claim that she was constructively discharged when she says she didn't quit but was fired?

Colley cites to *Hill v. Winn Dixie Stores, Inc.*, 934 F.2d

8

1518, 1527 (11th Cir. 1991) to support her constructive discharge claim. Colley states that " . . . in *Hill*, the Eleventh Circuit held that here was a question of fact as to the sex-based constructive discharge when plaintiff's supervisor repeatedly hovered around her, told her had not had a real man until she had him and made offensive, sexually charged comments to her." There are no allegations of sexual harassment made by the plaintiff in *Hill*. This court is confused by Colley's reliance *Hill*. In *Hill*, the plaintiff filed a complaint against Winn-Dixie for violations of the Jury System Improvement Act of 1978, 28 U.S.C. § 1875 (1986). Although the case did deal with constructive discharge, the court held that the "formal written reprimand by Fick and Bellerose, the criticism by Hill's supervisors in the few weeks following her jury service, and the withdrawal of Fick's customary support of the produce department did not create intolerable working conditions that would compel a reasonable person to resign . . . " *Id.* at 1527.

The undisputed facts in the instant case do not support a claim for constructive discharge. The harassment here, while substantial, did not rise to the level of severity necessary for constructive discharge, even if Colley quit despite her claim that she did not quit. Defendants' motion for summary judgment will be granted with regard to the constructive discharge claim.

9

Under the tort of outrage, liability is imposed for "unprivileged, intentional or reckless conduct of an extreme and outrageous nature, and only that which causes severe emotional distress." *American Road Service Co. v. Inmon*, 394 So.2d 361 (Ala. 1980). The conduct must be so "outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id*. Limited forms of sexual harassment do constitute outrage. *Brewer v. Petroleum Suppliers, Inc.*, 946 F.Supp. 926, 935 (N.D. Ala. 1996).

Defendants argue that Tarassoli's actions did not rise to the level of the severity necessary to constitute outrage. They also claim that Colley's decision to continue to work at Progress demonstrates that any alleged emotional distress was not so severe that no reasonable person could be expected to endure it. The court disagrees. In *Busby v. Truswal Systems Corp.*, 551 So.2d 322, 324 (Ala. 1989), the Alabama Supreme Court held that a plant supervisor's extreme sexual harassment of his female employees created a jury question as to liability for the tort of outrage. In *Busby*, the court found that there was evidence of at least seventeen incidents of harassment. *Id*. The Court found that the supervisor put his arms around the plaintiff, grabbed their arms, stroked their hair, acted as if he was going to pinch one of plaintiff's breasts with his hands and pliers, and made other

10

lewd comments regarding the plaintiffs' sex lives and his own. *Id.* In this case, according to Colley, Tarassoli repeatedly grabbed her breasts, told her he wanted to "f-k" her, kissed her, asked her to come home with him, massaged her, forced her to put her hand on his erection, and made lewd comments about her sex life and his own. This harassment went on for years. If Colley's allegations are true, her boss has not simply requested or threatened to touch her in a sexual manner, he has repeatedly touched her. As such, his actions may constitute conduct sufficiently outrageous to be actionable. These facts, if believed, are sufficiently similar to the facts in *Busby* to defeat a motion for summary judgment. This is a perfect "she says" "he says" case.

Defendants concede that there are triable issues of fact with respect to Colley's claims of assault and battery and invasion of privacy.

### Conclusion

The court, by separate order, will deny defendants' motion for summary judgment except as to Colley's constructive discharge claim.

DONE this 24th day of March, 2003.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

11